IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BEATRICE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07cv854-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Beatrice Brown (Brown) applied for disability insurance benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (the Act).  Brown's application was denied at the initial administrative level.  Brown then requested and received a hearing before an Administrative Law Judge (ALJ).  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Jurisdiction (Doc. #10); Def.'s Consent to Jurisdiction (Doc. #11).  Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the Commissioner's decision.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines⁴ (grids) or call a vocational expert.  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available

---

³*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

⁴ *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g);  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.    ISSUES

### A.    *Introduction*

Brown was forty-three years old and had completed the ninth grade at the time of the hearing before the ALJ. (Tr. 22 & 435). Employing the five-step process, the ALJ found Brown had not engaged in substantial gainful activity at any time relevant to the decision (Step 1). (Tr. 25). At Step 2, the ALJ found Brown suffered from the severe impairments of: mild congestive heart failure, stable; obstructive sleep apnea; obesity; gastroesophageal reflux disease; asthma/COPD, stable; borderline intellectual functioning; and major depression. *Id*. Nonetheless, the ALJ found Brown did not possess an impairment or combination of impairments that met or equaled the criteria of any listed impairment set forth in the Listing of Impairments (Step 3). *Id*. At Step 4, the ALJ determined Brown did not possess the RFC to perform any past relevant work. *Id*.

At Step Five, the ALJ evaluated Brown's RFC, age, education, and work experience, as well as testimony from a vocational expert (VE) regarding the availability, in significant numbers, of other work Brown could perform in the national economy. Upon consideration of this evidence, the ALJ determined Brown possessed the RFC to perform jobs that exist in significant numbers in the national economy. *Id*. Consequently, the ALJ found Brown was not disabled within the meaning of the Act. (Tr. 26).

### B.     *Brown's Claims*

Brown's only claim is that the Appeals Counsel erred when it denied her request for review.  (Doc. #13 at 11).

## IV.  DISCUSSION

After receiving an unfavorable decision from the ALJ, Brown requested review by the Appeals Counsel.  In her request for review to the Appeals Counsel, Brown presented new evidence[5] supporting her claim that her Mild Mental Retardation met Listing 12.05C. (Tr. 408-430).  Brown argued the new evidence showed deficits in adaptive functioning. (Tr. 404-407).  The Appeals Counsel considered the new evidence and denied review. (Tr. 5-8).

"The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"  *Ingram,* 496 F.3d at 1261 (quoting 20 C.F.R. § 404.970(b)).  In order to meet Listing 12.05C, a claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C (2007).

---

[5] *"*With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process."  *Ingram v. Comm'r of Social Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); *see* 20 C.F.R. § 404.900(b).

The Commissioner essentially concedes that Brown can show "subaverage general intellectual functioning" through the results of her IQ test, which revealed a full-scale IQ of 66 (Tr. 19).  However, the Commissioner rightly notes that "the ALJ was not required to find that Plaintiff was mentally retarded based on IQ scores alone."  (Doc. #18 at 5); *see, e.g., Tindal v. Astrue*, 2008 WL 725552 (M.D. Fla. Mar 17, 2008).  The plain language of the Listing requires both subaverage intellectual functioning as well as deficits in adaptive functioning.

While Brown's full scale IQ of 66 creates a presumption of mental impairment, "the Commissioner may present evidence of [Brown's] daily life to rebut this presumption of mental impairment."  *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001).  Indeed, the evidence surrounding Brown's daily life and her ability to adapt was the basis for the ALJ's rejection of Brown's claim that she met Listing 12.05C.  (Tr. 23).

The new evidence submitted to the Appeals Counsel by Brown did not warrant review of the ALJ's decision because it did not render the ALJ's conclusion contrary to the weight of the evidence currently of record.  "In support of her request for review, [Brown] submitted an intelligence test administered during the developmental period and school records from [the] Montgomery Public School System."  Pl.'s Brief in Support (Doc. #13 at 12).  While most of the intelligence test is illegible, it appears to be a Wechsler Intelligence Scale for Children - Revised.  (Tr. 413-416).  The test's score of 61 as well as Brown's school records support her claim of subaverage intellectual

7

functioning.

However, while much of the new evidence supported the finding that Brown suffers from subaverage intellectual functioning, it failed to establish the deficits in adaptive functioning requirement of the Listing.   Brown argues the evidence did show she suffered "substantial deficiencies in multiple adaptive areas, including functional academic skills, social/interpersonal skills, self-care, and safety." (Doc. #13 at 15).  In support, Brown relies on the 9th edition of the American Association of Mental Retardation's (AAMR) manual, Mental Retardation: Definition, Classification, and Systems of Supports, to argue that the new evidence showed she has deficits in several of the AAMR's enumerated adaptive skill areas.  (Doc. #13 at 14).

While the psychological report that accompanied Brown's intelligence test may have stated that she was "destructive and explosive," and "extremely defensive with her peers," and that she "wasted time, annoyed others, was easily distracted," "disliked reading math," and had "poor communication[] skills," there is no indication as to the severity of those behaviors.  (Tr. 413-430).  The AAMR manual requires that the deficits in functioning "fall substantially below the average level of  functioning." AAMR manual at 49.  The bare statements contained in the report do not establish that Brown's adaptive functioning in these areas fell substantially below the average level of functioning.

The Appeals Counsel did however have specific information regarding Brown's adaptive functioning within the record, which indicated normal adaptive functioning.  The

8

ALJ discussed Brown's adaptive functioning and set forth his rejection of her claim of mental retardation based on her ability to adapt. (Tr. 21). The ALJ's reasons for rejecting Brown's claim included her ability to drive a car, do household chores, pay her bills, escape from prison, and "conduct business within the larger society of things that need to be done to take care of herself and her children." *Id*. The ALJ also relied on Doctor Vonceil C. Smith's expert opinion that Brown's adaptive functioning placed her in the borderline range of intellectual functioning, despite her low IQ score.[6] This reasoning was sound and was not contradicted by the new evidence.

Thus, the new evidence submitted to the Appeals Counsel did not render the ALJ's conclusion contrary to the weight of the evidence currently of record and the Appeals Counsel did not err in denying review.

## V.   CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court concludes that the ALJ's non-disability determination is due to be affirmed. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

---

[6] Dr. Smith administered the IQ test, which found Brown had a full-scale IQ of 66. (Tr. 240).

DONE this 2nd day of December, 2008.

/s/ Wallace Capel, Jr.

WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE